IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JAMES H. SWITZER, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| VS. | : | **7 : 04-CV-64 (RLH)** |
| | : | |
| WILLIAMS INVESTMENT CO., | : | |
| d/b/a DAYS INN OF ADEL, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### ORDER

Presently pending in this diversity action is the Motion for Summary Judgment filed on

behalf of defendant Williams Investment Co.  Both parties have consented to the United States

Magistrate Judge conducting any and all proceedings herein, including but not limited to the

ordering of the entry of judgment.  The parties may appeal from this judgment, as permitted by

law, directly to the Eleventh Circuit Court of Appeals.  28 U.S.C. § 636(c)(3).

This premises liability case arises out of events occurring at the Days Inn hotel in Adel,

Georgia, on January 17, 2004.  This hotel is owned by the defendant, and was at the time of the

alleged incident, undergoing renovations.  The plaintiff, a truck driver at the time of the alleged

incident, stopped in Adel on the night of January 16, 2004, while he was en route to Florida to

make a delivery.  In his deposition, the plaintiff testified that he checked into the Days Inn some

time after midnight on the 17th, and began taking a shower the next morning.  The shower, part

of a shower/bathtub combination, was located in a small room with the toilet and adjacent to the

sink/vanity area, with a single recessed light fixture located in the ceiling.  The plaintiff testified

that he did not notice the absence of a cover on the light fixture.  After standing underneath the

running shower water for ten to fifteen minutes, the plaintiff raised his right arm to rinse off and

then saw a bright flash of light and fell out of the tub, striking his neck and head on the toilet.

After an apparent period of unconsciousness, the plaintiff regained consciousness and noticed

glass on the floor.  Plaintiff's feet were still on the edge of the tub, and he noted that the light

bulb in the fixture at issue had been shattered.  He also noted that the ceiling was wet, attempted

to wipe the moisture from the ceiling, and became sick, vomiting in the sink.  Plaintiff proceeded

to dress and notified the front desk of the incident.  Connie and Larry Frees, the area manager

and the maintenance engineer for defendant's area hotels, arrived at the plaintiff's room; Connie

frees offered him food or drink and Larry Frees replaced the light bulb and light cover.  The

plaintiff continued to feel sick, vomiting several more times, and then left the hotel and

continued on to Florida to deliver his load.  On his return trip, the plaintiff stopped at a hospital

in Ocoee, was given a shot and released.  The plaintiff spent the night in Wildwood and then

returned to his home in Indiana the following day.  The plaintiff alleges that he continues to

suffer pain in his neck and head, as well as dizziness, numbness and tingling in the hands and

feet.  The plaintiff maintains that his treating physician has not released him to resume work due

to his continuing impairments.

*Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  All facts and

reasonable inferences drawn therefrom must be viewed in the light most favorable to the

nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth

specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Van T.

Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the party moving for summary judgment, the defendant has the initial burden to

demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  The

defendant has supported its motion with a memorandum, the pleadings, the deposition testimony

of the plaintiff and defendant's employees Connie and Larry Frees, and the affidavits of Larry

Frees and electrician James Simpson.

The defendant argues that it is entitled to summary judgment in that the cause of the

alleged incident is merely a matter of speculation and conjecture, and because there has been no

showing that the defendant had any knowledge of any hazardous condition on the premises.  In

response to the defendant's summary judgment motion, the plaintiff presents the affidavit of

James V. Copeland, a licensed electrical contractor, who asserts that the uncovered light fixture

violated the National Electric Code.  The plaintiff argues that this violation of the National

Electrical Code establishes the defendant's negligence per se, and that the issue of causation is a

matter reserved for the jury.

"The owner or occupier of land has a duty to invitees to exercise ordinary care in keeping

the premises safe. This duty of ordinary care requires the owner or occupier to protect the invitee

from unreasonable risks of harm of which the owner has superior knowledge. To establish

superior knowledge, [the plaintiff] must prove that (1) the defendants had actual or constructive

knowledge of the hazard; and (2) [he] lacked knowledge of the hazard despite the exercise of

ordinary care due to the actions or conditions within the control of the owner or occupier.

Hamblin v. City of Albany, 612 S.E.2d 69, 71 (Ga. Ct. App. 2005).  However, "[i]n premises

liability cases, proof of a fall, without more, does not give rise to liability on the part of a

proprietor.  The true basis of a proprietor's liability for personal injury to an invitee is the

proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable

risk of harm.  Recovery is allowed only when the proprietor had knowledge and the invitee did

not."  Emory Univ. v. Smith, 581 S.E.2d 405 (Ga. Ct. App. 2003).

In response to the defendant's summary judgment motion, the plaintiff presented the

affidavit of James V. Copeland, a licensed electrical contractor, who testified that the uncovered

light fixture violated the National Electric Code "because the same is located within a wet or

damp area as above described and water can enter or accumulate in the wiring compartments,

lampholders or other electrical parts and thus said luminaire is not suitable for wet or damp

locations."  Copeland affidavit at ¶ 7.  Mr. Copeland further testified that "it is my professional

opinion that a person could receive an electrical shock as a result of taking a shower in the

location described in the affidavit of James L. Simpson, with the light switched 'on' and no

protective globe on the luminaire."  Copeland affidavit at ¶ 8.  The defendant, in its reply to the

plaintiff's response, objects to the proffer of Copeland as an expert and attacks Copeland's

affidavit testimony, arguing that this testimony, as well as his subsequent deposition testimony,

fail to create a genuine issue of material fact herein.

***Defendant's summary judgment showing***

In its summary judgment showing, the defendant relies on the plaintiff's deposition, and

the affidavits of Larry Frees and James Simpson.  Frees, the maintenance engineer for the

defendant, testified in his affidavit that it was his usual custom and practice to check every room

at the Days Inn of Adel within any given three day period, and that to the best of his knowledge

and belief, no one had reported any problem associated with the recessed light fixture in the

room in question prior to January 17, 2004, nor had he observed and replaced a missing fixture

cover.  Mr. Frees further testified that the light fixture in the room in question had not been

rewired or modified since the alleged incident involving the plaintiff on January 17, 2004.

James L. Simpson testified in his affidavit that he is a master electrician with over 46 years

of experience in designing and working with electrical systems.  Mr. Simpson inspected the

wiring and light fixture at issue in Room 106 of the Days Inn of Adel, having been informed by

Mr. Frees that no changes had been made thereto after the January 17, 2004, incident.  Using a

Multi-Meter, Mr. Simpson tested the wiring and light fixture and concluded that same was

properly wired and connected to the electrical system, with proper grounding and no defects.

The defendant argues that the plaintiff cannot establish the defendant's superior

knowledge of any hazard.  The defendant cites to Hamblin v. City of Albany, 612 S.E.2d 69 (Ga.

Ct. App. 2005), wherein a woman who injured her hand on a handrail at the Parks at Chehaw

was defeated at the summary judgment stage of the proceedings, based on evidence that the park

officials regularly maintained the handrails and had no knowledge that splintering had rendered

the handrail hazardous.  In granting the defendant's summary judgment motion, the Georgia

Court of Appeals noted that

> [a]n owner or occupier is not "an insurer of an invitee's safety." The
> law requires only "such diligence toward making the premises safe
> as the ordinarily prudent person in such matters is accustomed to
> use." . . . [the plaintiff] has failed to show that the defendants'

> maintenance of the wooden handrail at the outdoor park created a
> dangerous condition. . . . . Because Hamblin failed to present
> sufficient evidence showing that the defendants had superior
> knowledge of a hazardous condition, there is no factual issue
> requiring jury determination.

Id. at 248-249 (internal citations omitted).

*Plaintiff's response*

In response to the defendant's motion for summary judgment, the plaintiff argues that the

affidavit of James V. Copeland establishes that the uncovered light fixture was in violation of the

National Electric Code and was therefore negligence per se.  Although the plaintiff does not

expressly state, he clearly proffers Mr. Copeland as an expert in the field of electrical installation

and safety.  "On a motion for summary judgment, disputed issues of fact are resolved against the

moving party . . . But the question of admissibility of expert testimony is not such an issue of

fact, and is reviewable under the abuse-of-discretion standard."  General Electric Co. v. Joiner,

118 S. Ct. 512, 517 (1997).

"Under Rule 702 [of the Federal Rules of Evidence] and *Daubert*, district courts must act

as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant."  Rink v.

Cheminova, Inc, 400 F.3d 1286, 1291 (11th Cir. 2005).  The *Daubert* requirements apply to all

expert testimony.  Kumho Tire Company, Ltd. v. Carmichael, 119 S. Ct. 1167, 1175 (1999).

> District courts are charged with this gatekeeping function "to ensure
> that speculative, unreliable expert testimony does not reach the jury"
> under the mantle of reliability that accompanies the appellation
> "expert testimony."  To fulfil their obligation under *Daubert*, district
> courts must engage in a rigorous inquiry to determine whether: "(1)
> the expert is qualified to testify competently regarding the matters
> he intends to address; (2) the methodology by which the expert
> reaches his conclusions is sufficiently reliable as determined by the
> sort of inquiry mandated in *Daubert*; and (3) the testimony assists

6

> the trier of fact, through the application of scientific, technical, or
> specialized expertise, to understand the evidence or to determine a
> fact in issue." The party offering the expert has the burden of
> satisfying each of these three elements by a preponderance of the
> evidence.

Rink, 400 F.3d at 1291-92 (internal citations omitted).

The court notes that under *Daubert*, the gatekeeping inquiry "must be tied to the facts of a

particular case", and that *Daubert* itself "makes clear that the factors it mentions do not

constitute a definitive checklist or test." Kumho, 119 S. Ct. at 1175.

Herein, the plaintiff's expert, James V. Copeland, testified in his affidavit that he is a

licensed electrical contractor with 25 years of experience as an electrician, "including wiring and

placement of fixtures in residential and commercial structures." Copeland affidavit at ¶ 2. In his

deposition testimony, Mr. Copeland testified that he called a City of Adel official to determine if

the city had adopted the National Electric Code, after plaintiff's attorney contacted him and

asked him to "research to see if there was any violation of a code." Copeland depo. at p. 8. In

preparation to give his affidavit, Mr. Copeland read the plaintiff's deposition and the affidavit of

defendant's electrical expert, contacted the City of Adel and reviewed the National Electric Code

to determine if there was a violation. He did not look at the fixture itself that allegedly caused

the shock to plaintiff, but did look at the photographs attached to the affidavit of defendant's

expert. Mr. Copeland testified in his deposition that he had never worked as a code inspector,

had never testified as an expert and had never given an affidavit prior to this case. When asked

if he considered himself an expert on the National Electric Code, he replied that "[t]here's no

such thing." Copeland depo. at p. 14. He elaborated that "[a]nybody that's an expert on the

National Electric Code has no time to do anything but the National Electric Code. The National

Electric Code is a guide.  I am familiar with the guide.  I have been in the business for a

considerable number of years and I know how to read."  Copeland depo. at p. 14.

In regard to the substance of his affidavit testimony, Copeland testified that inasmuch as

he had not seen the fixture itself, he did not know whether it was approved for damp locations,

that he had installed similar light fixtures in bathrooms, and that he had never seen a brand or

style of recessed light fixture that was not approved for both damp and dry locations.  Copeland

depo. at p. 14.  Defendant's attorney asked Mr. Copeland:

> Q. . . . Let's assume that somehow in the course of taking a shower, Mr.
> Switzer slings some water over towards that light fixture and some got on
> the bulb and, for some reason, that bulb popped, but he didn't touch
> anything.  Do you think he could get a shock that way?
>
> A.  As far as getting a shock that way, the only way he could get a shock
> that way would have been for there to be a long enough chain of electrons to
> connect the source and him to ground, which is probably unlikely.

Copeland depo. at p. 28.

Mr. Copeland went on to testify that the only way a person could have received an

electrical shock from the fixture was to have touched the filament of the broken bulb or to have

touched the center contact of the bulbless fixture.  Copeland depo. at p. 28-29.  Defense counsel

then asked Mr. Copeland:

> Q.  But, otherwise, you can't point me to anyplace in the National
> Electric Code that makes that express statement about the
> requirement that a cover or globe must be on the fixture at all times?
>
> A.  Every possibility is not listed in the code.  It's just the things that
> they feel are necessary.  It's not everything.  It's just a minimum.
> I'll say that the National Electric Code is a minimum of things for
> safe practice."

Copeland depo. at pp. 36-37.

Under Rule 702 of the Federal Rules of Evidence and the guidelines set forth in *Daubert*, the court finds that Mr. Copeland's testimony regarding the light fixture at issue being in violation of the National Electric Code is not reliable, and that his experience does not qualify him as an expert herein. His testimony establishes that he is only "familiar" with the National Electric Code, that he never inspected the actual light fixture at issue herein, and that he had installed similar fixtures in bathrooms that were in fact approved for both damp and dry locations. Although Mr. Copeland testified to having 25 years of electrical contracting experience, his deposition testimony revealed that he had no experience as a code inspector or in offering opinions as an electrical expert. Moreover, Copeland's deposition testimony largely contradicts his affidavit testimony as to the light fixture posing a National Electric Code violation and as to the likelihood of receiving a shock as alleged by the plaintiff's version of events. As such, his testimony fails to create a genuine issue of material fact as to the defendant's superior knowledge of any hazard. The plaintiff has offered no other testimony or evidence to rebut the defendant's showing that it did not possess any knowledge of any hazard in Room 106 of the Days Inn of Adel prior to January 17, 2004. "The mere showing of the occurrence of any injury, without more, does not create a presumption of negligence. Rather, the true ground of liability is the owner's superior knowledge of the peril and the danger therefrom." Clemmons v. Griffin, 498 S.E.2d 99, 100 (Ga. Ct. App. 1998). Accordingly, the defendant's Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED**, this 31st day of March, 2006.

/s/ **_Richard L. Hodge_**
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb